IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MEGAN HEMLING, individually and as personal
representative for the spouse and children of Robert J.
Hemling, decedent,

|  |  |
|---|---|
| Plaintiff, | OPINION and ORDER |
| v. | 19-cv-894-jdp |

SOO LINE RAILROAD COMPANY, d.b.a.
CANADIAN PACIFIC, and CEDAR CREEK, LLC,

Defendants.[1]

Robert Hemling was a train conductor for defendant Soo Line Railroad Company. He died after he was crushed between a railcar and lumber stacked near the track at facility operated by defendant Cedar Creek, LLC. His wife, Megan Hemling, brings a claim against Soo Line under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, and state-law claims against Cedar Creek for breach of contract, survival, and wrongful death. The defendants bring crossclaims against one another, but the crossclaims aren't at issue in this opinion.

Both defendants move for partial summary judgment. Soo Line says that it isn't liable because it was unaware of the dangerous condition that led to Robert's injury and death. Dkt. 47. But Megan has adduced evidence that a few days before Robert's death, another Soo Line employee saw the lumber that crushed Robert stacked near the track, so the court will deny Soo Line's motion. Cedar Creek argues that Megan can't bring a claim for breach of a contract between it and Soo Line because Robert wasn't a party to the contract. Dkt. 36. But

---

[1] The court will refer to Megan and Robert Hemling by their first names for clarity.

the contract included provisions intended to ensure the safety of Soo Line employees, so Robert was a third-party beneficiary of the contract, and Megan can assert that claim on behalf of Robert's estate. Cedar Creek also contends that Megan cannot assert all of the state-law claims on behalf of herself, her children, and Robert's estate. The court agrees, and it will dismiss claims asserted on behalf of improper parties. But each of the claims is properly asserted on behalf of at least one proper party, so none of the state-law claims against Cedar Creek will be dismissed entirely.

## UNDISPUTED FACTS

The following facts are undisputed; the court will discuss additional facts specific to each defendant's motion in its analysis below.

In 2017, Soo Line entered into an "Agreement for Private Siding" with an entity called RK Midwest Enterprises. Dkt. 51-1. Cedar Creek later acquired RK Midwest and assumed its obligations under the agreement. The agreement granted Soo Line the right to use Cedar Creek's "private siding," a quarter-mile of railroad track privately owned by Cedar Creek at its lumber mill in Sparta, Wisconsin. Soo Line used the private siding to deliver lumber to Cedar Creek's lumber mill.

On March 27, 2018, Robert Hemling and Norbert Denzer were operating a Soo Line train, with Robert as the train's conductor and Denzer as its engineer. One of their tasks that day was a delivery to the Sparta facility. They attempted to "shove" into the facility by using the train's locomotive to push two railcars onto Cedar Creek's private siding (as opposed to pulling the cars from the front). Denzer's job during the shove was to control the locomotive. Because Denzer couldn't see the cars at the front of the train during the shove, Robert's job

was to position himself on the leading car so he could see the track ahead and radio instructions to Denzer.

As the train neared the stopping point, Denzer lost radio contact with Robert. Denzer stopped the train, exited the locomotive, and found Robert lying next to the train, injured and unconscious. Robert had been crushed between a train car and lumber stacked very close to the tracks, in violation of railroad clearance requirements, which required that eight and one-half feet from the centerline of the track be kept clear of obstructions. Robert was taken to a hospital, where he died later that day from his injuries.

The court has jurisdiction over the FELA claim because it arises under federal law. 28 U.S.C. § 1331. It has supplemental jurisdiction over Megan's state-law claims because they form part of the same case or controversy as her FELA claim. 28 U.S.C. § 1367(a).

ANALYSIS

**A. Soo Line's motion**

Soo Line seeks summary judgment on Megan's FELA claim.[2] The basic elements of a FELA claim are the same as those of a negligence claim—duty, breach, causation, and damages—but a FELA claim has "a relaxed standard of causation" that requires the plaintiff to prove only that the employer's negligence played at least a slight part in causing the employee's injury or death. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014)

---

[2] Megan says in her amended complaint that she brings claims on behalf of Robert's estate, herself, and her children. Dkt. 5, ¶¶ 6–7. Cedar Creek's motion, discussed below, challenges Megan's ability to bring claims on behalf of all of these individuals. But Soo Line's motion doesn't address the issue, so the court won't analyze that issue as it pertains to the claims against Soo Line. But ultimately, the FELA claim is properly asserted only on behalf of Robert's estate.

(internal quotation marks omitted). Just as with a common-law negligence claim, an essential element of a FELA claim is foreseeability. So a plaintiff bringing a FELA claim based on an unsafe work condition must show that employer had actual or constructive notice of the dangerous condition that caused the injury. *LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 911 (7th Cir. 2020). A defendant would have constructive notice of a dangerous condition if it would have been discovered by a reasonable inspection. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1063 (7th Cir. 1998). Soo Line contends that it had neither actual nor constructive notice, because the improper stacking of lumber at the Sparta mill was a one-time occurrence that Soo Line didn't know about and couldn't have discovered.

Megan argues that Soo Line had constructive notice of the improper stacking because it was well aware that clearance violations could result in injury or death to railroad employees. Soo Line had issued a safety alert about clearance violations. Dkt. 67-3. But knowledge that clearance violations can be dangerous does not establish constructive notice of any specific clearance violation. If that kind of general awareness established constructive notice, a railroad would be deemed to have knowledge of every violation of railroad safety rules.

But Megan makes a sufficient showing that Soo Line had actual notice of clearance violations at the Sparta facility based on the deposition testimony of another Soo Line conductor, Tracey Richardson. Richardson testified that when he serviced the Cedar Creek facility just a few days before Robert's death, he saw "lumber on the side of the track" within the clearance area.[3] Dkt. 51-9 (Richardson Dep. 69:14–15; 74:9–75:3).

---

[3] Megan also says that the lumber was so close to the track that Soo Line's train struck it when it pulled out of the facility. Dkt. 74, at 6. But she cites no evidence that any Soo Line employee was aware of that collision, so this fact is immaterial.

Soo Line contends that Richardson's testimony is too speculative to be admissible, but the court is not persuaded. Soo Line says Richardson didn't actually measure the distance between the lumber and the center of the track. But Richardson didn't need to take a measurement to estimate that the distance between the lumber and the track was less than the clearance requirement. *See Ryan v. Kohl's Corp.*, No. 17 CV 5854, 2018 WL 4616355, at *1 (N.D. Ill. Sept. 26, 2018) (plaintiff didn't need to measure distance between store's merchandise racks to estimate that her wheelchair couldn't fit between them); *see also Roberts v. Hochstetler*, 592 F. Supp. 703, 708 (N.D. Ind. 1983) (plaintiff's estimation that he had walked 20 to 25 feet in a given time was rationally based on his perception).

Soo Line contends that even if Richardson's testimony is admissible and he saw lumber stacked too close to the track, Soo Line didn't have actual notice because Richardson didn't report the clearance violation at the Sparta facility to any supervisory employee. Dkt. 73, at 7–8. To support the idea that knowledge of a dangerous condition is imputed to Soo Line only if it is known to a supervisory employee, Soo Line relies on three unpublished cases from other jurisdictions: *Basinger v. CSX Transp., Inc.*, No. 94-3908, 1996 WL 400182, at *5 (6th Cir. July 16, 1996); *Davis v. Nat'l R.R. Passenger Corp.*, No. 91-1052, 1991 WL 254135, at *3 (4th Cir. Dec. 4, 1991); *Johnson v. Grand Trunk W. R.R., Inc.*, No. 07-CV-11129, 2008 WL 283703 (E.D. Mich. Jan. 31, 2008). *Basinger* is not persuasive because the court did not cite any authority or explain its reasoning. Neither *Davis* nor *Johnson* are persuasive because in those cases there was no evidence that *any* railroad employee had knowledge of the dangerous condition. And because Soo Line made this point only in its reply brief, Megan has had no opportunity to respond.

The court is not aware of any binding precedent directly on point. But by the terms of the statute, a railroad's liability under FELA encompasses the negligence of any of its "officers, agents, or employees," not merely of its supervisory employees. 45 U.S.C. § 51. And at least one circuit court of appeals has held, in a precedential opinion, that a railroad accident is foreseeable if "an officer, *employee* or agent of the railroad . . . had actual knowledge of [the unsafe condition] before the accident." *Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 161 (8th Cir. 1981) (emphasis added).

Richardson's testimony provides a basis for Soo Line's knowledge and its negligence. Richardson testified that he didn't remember being trained to report obstructions within the customer safety handbook's eight-and-a-half-foot clearance requirement. Dkt. 51-9 at 35:1–9. And he said that if he had been trained on the handbook's clearance requirement, he would have reported to his supervisor that the lumber was too close to the track. *Id*. at 74:22–75:3. Given FELA's broad remedial purpose, *Abernathy v. E. Ill. R.R. Co.*, 940 F.3d 982, 988 (7th Cir. 2019), the court declines to adopt Soo Line's restrictive view of actual notice.

Megan has adduced admissible evidence that at least one Soo Line employee knew that lumber was stacked too close to the track at the Sparta facility. The court concludes that Megan raised a genuine dispute of material fact about whether Soo Line had actual notice of the condition that led to Robert's injury. The court will deny Soo Line's motion for summary judgment.

## B. Cedar Creek's motion

Cedar Creek moves for summary judgment on Megan's claims for breach of contract. It also moves for summary judgment on the survival claims that Megan asserts on behalf of herself and her children, and the wrongful-death claims she asserts on behalf of her children. Both

sides assume that Wisconsin law governs Megan's state-law claims, so the court will do the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

### 1.  Breach of contract

Megan contends that Cedar Creek breached the private siding agreement's safety requirements by stacking lumber too close to the track. Cedar Creek argues that it's entitled to summary judgment on this claim because Megan was not a party to the contract.

The general rule in Wisconsin, like other jurisdictions, is that only a party to a contract can bring a claim for the contract's breach. *Schilling by Foy v. Empl'rs Mut. Cas. Co.*, 212 Wis. 2d 878, 569 N.W.2d 776, 780 (Ct. App. 1997). Although Robert wasn't a party to the private siding agreement, Megan relies on what is known as the third-party beneficiary exception to the general rule. This exception provides that if the parties to a contract entered into the agreement "directly and primarily" for the benefit of a third party, the third party can bring an action for breach of the contract. *Id.* To show that Robert was a third-party beneficiary of the private siding agreement, Megan must show that the agreement "indicates that [Robert] either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit." *Id.* But if Robert received only an indirect or incidental benefit under the agreement, Megan cannot bring an action for its breach. *Id.*

The private siding agreement contained provisions requiring Cedar Creek to comply with Soo Line's customer safety handbook as well as any "laws, orders, regulations, rules, and . . . engineering standards" concerning railways, including but not limited to clearance requirements. Dkt. 51-1, ¶¶ 5.4, 6.1. These provisions show that the parties intended to protect Soo Line's employees, a class of people of which Robert was a member.

To resist the third-party beneficiary doctrine, Cedar Creek relies on *Schilling*, 569 N.W.2d 776. In *Schilling*, the court considered whether a student who was injured at school was a third-party beneficiary of an employment contract between the school district and a teacher. The teacher's contract stated that it was subject to school board "rules, regulations, and policies." *Id.* at 779. The student contended that this provision meant that the school's faculty handbook, which contained language about student safety, was incorporated into the contract, along with teacher-developed curriculum plans and safety rules, and that he was therefore an intended beneficiary of the teacher's contract. *Id.* at 780–81.

The court held that the student wasn't a third-party beneficiary of the employment contract. The court first rejected the student's argument that the curriculum plans, safety rules, and faculty handbook were incorporated into the employment contract by reference. The court noted that nothing in the contract or elsewhere suggested that teacher-developed curriculum plans and safety rules should be deemed to be district rules, regulations, or policies. *Id.* at 781. And it concluded that the faculty handbook wasn't incorporated for two reasons: (1) it wasn't expressly identified in the contract; and (2) it was more like the school's "general operating procedure" than a set of rules, regulations or policies because it gave only general guidance, not specific directives, on such matters as keeping classrooms neat and behaving "in a way becoming to [the] profession" while off-duty. *Id.*

*Schilling* is easily distinguishable from this case on the question of incorporation by reference. Unlike the teacher contract in *Schilling*, the private siding agreement expressly cites Soo Line's customer safety handbook, including a link to an online copy of the handbook. Dkt. 51-1, ¶ 5.4. And the agreement makes compliance with the handbook an express term of the contract. *Id*. The agreement has an article specifically devoted to clearance requirements,

8

expressly requiring Cedar Creek comply with them. *Id.*, ¶ 6.1. So the Soo Line customer safety handbook is expressly incorporated into the private siding agreement.

The *Schilling* court also concluded that even if the faculty handbook were incorporated into the employment contract, there wasn't any evidence that the parties "intended to enter into the contract directly and primarily for the benefit of students" because nothing in the handbook contained "anything other than . . . specific provisions on how teachers are to carry out their responsibilities to the district." *Schilling*, 569 N.W.2d at 781. The court acknowledged that the handbook contained provisions on supervision of students and liability, but it concluded that those provisions were for the primary benefit of the district, not the students, "because the district itself has an interest in limiting its exposure." *Id.* at 782.

The agreement in *Schilling* is distinguishable on this point as well. Unlike the faculty handbook in *Schilling*, the very first provision of the customer safety handbook expressly states that the handbook's purpose "is to relay vital safety information," specifically mentioning safety requirements for private siding, because "the consequences of unsafe acts and conditions can affect both [the customer's] employees and [Soo Line's] employees." Dkt. 51-2, ¶ 1.1. And the customer safety handbook stresses elsewhere that clearance violations at private sidings can cause "[v]ery serious injuries to railway employees." *Id.*, ¶ 2.1.4. These provisions show that the parties intended to do more than merely limit Soo Line's liability in the event of an injury. The safety of Soo Line's employees, particularly regarding clearance requirements, was a primary purpose of the private siding agreement.

Cedar Creek dismisses the agreement's safety and clearance provisions as "one-off provisions that are unrelated to the rest of the contract." Dkt. 71, at 6. It contends that employee safety was not the parties' primary purpose, which was to contract for the delivery

of lumber from Soo Line to Cedar Creek. But this argument fails for two reasons. First, the safety provisions form a significant part of the agreement, with one of its 13 articles specifically devoted to compliance with clearance requirements. Second, Megan doesn't have to show that employee safety was the *sole* purpose of the agreement, or even its *most* important purpose, only that it was "*a primary purpose.*" *Mercado v. Mitchell*, 83 Wis. 2d 17, 264 N.W.2d 532, 538 (1978) (emphasis added). This point is illustrated by *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 151 Wis. 2d 608, 445 N.W.2d 689 (Ct. App. 1989), *aff'd*, 155 Wis. 2d 704, 456 N.W.2d 359 (1990). In that case, the court considered a lease agreement between the city of Milwaukee and a private organization that required the organization's board meetings to be conducted under Wisconsin's open-meeting law. After the board prevented a newspaper reporter from attending a closed meeting, the newspaper and the reporter brought suit, contending that they were third-party beneficiaries under the lease agreement. *Id.* at 690. The court held that the plaintiffs were third-party beneficiaries of the lease because the lease affected many public interests and because the open-meeting provision demonstrated "a primary purpose of protecting the public interests [the lease] affects" through transparency. *Id.* at 692. No one would say that the most important purpose of a commercial lease is compliance with the state's open-meeting law. But *Pleva* shows that the benefit to the third party can be one of multiple primary purposes of a complex contract.

The court agrees with Cedar Creek that nothing suggests that Megan or her children were themselves intended to be third-party beneficiaries of the private siding agreement. Megan doesn't respond to Cedar Creek on this point. The court concludes that Megan may bring a claim on behalf of Robert's estate for breach of the private siding agreement as a third-party

beneficiary. But the court will grant summary judgment on the breach of contract claims asserted on behalf of Megan and her children.

### 2. Survival and wrongful death

Megan asserts claims for survival and wrongful death under Wis. Stat. § 895.04, which allows a deceased's personal representative to bring a suit for damages if the death was caused by another's wrongful act. "A survival claim compensates the estate of the deceased . . . for damages suffered by the deceased between the time of the injury and the time of death." *Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co.*, 2014 WI 82, ¶ 45, 356 Wis. 2d 582, 850 N.W.2d 866. And a wrongful-death claim "compensates the deceased's relatives for the damages they suffer as a result of the deceased's death." *Id.*

Cedar Creek contends that Megan cannot bring a survival claim on behalf of herself or her children. Cedar Creek is correct, as a survival action is brought by the representative of the deceased's estate for the deceased's "personal injury damages" alone, and "[t]he damages accrue to the estate of the deceased." *Id.*, ¶ 45 n.30 (internal quotation marks omitted). Cedar Creek is also correct that Megan cannot assert wrongful-death claims on behalf of her children. Section 895.04 creates a "hierarchy of beneficiaries" for such claims. *Id.*, ¶ 7. "The first class of beneficiaries is the surviving spouse, with a set-aside from his or her recovery for minor children . . . . If there is a surviving spouse, other beneficiaries do not have a cause of action for wrongful death." *Id.* (internal quotation marks omitted).

Megan agrees that only the deceased's personal representative may bring a survival claim and that the surviving spouse must bring a wrongful-death claim. Dkt. 62, at 7–8. But she argues that Cedar Creek's motion should be denied because she is the only named plaintiff in this action. Her argument avoids the central issue that Cedar Creek raises, which is whether

she may assert such claims on behalf of others in the capacity of personal representative or surviving spouse. The court agrees with Cedar Creek that she may not, so it will grant this portion of Cedar Creek's motion and dismiss the challenged claims.

CONCLUSION

The court will deny Soo Line's motion because Megan has adduced evidence that Soo Line had actual notice of the hazard that caused Robert's death. The court will deny Cedar Creek's motion in part, as Megan has the right to bring a claim for breach of the private siding agreement on behalf of Robert's estate. The court will grant the remainder of Cedar Creek's motion by dismissing the contract and survival claims that Megan has asserted on behalf of herself and her children as well as the wrongful-death claims that she has asserted on behalf of her children. This means that the following claims remain in the case:

- a FELA claim against Soo Line;

- breach-of-contract and survival claims on behalf of Robert's estate against Cedar Creek; and

- a statutory wrongful-death claim against Cedar Creek.

ORDER

IT IS ORDERED that:

1. Defendant Soo Line Railroad Company's motion for partial summary judgment, Dkt. 47, is DENIED.

2. Defendant Cedar Creek, LLC's motion for partial summary judgment, Dkt. 36, is GRANTED in part. Plaintiff Megan Hemling's claims for breach of contract on behalf of herself and her children, her survival claims on behalf of herself and her children, and her wrongful-death claims on behalf of her children are DISMISSED. The remainder of Cedar Creek's motion is DENIED.

Entered February 12, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

13